IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| TYSON GROOMS | ) | |
| | ) | |
| v. | ) | No. 1:19-0060 |
| | ) | |
| ANDREW M. SAUL | ) | |
| Commissioner of Social Security | ) | |

**To:** The Honorable William L. Campbell, Jr., District Judge

# REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner" or "Defendant") denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") as provided under Titles II and XVI, respectively, of the Social Security Act. The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket Entry ("DE") 20), to which Defendant has filed a response. (DE 21.) Plaintiff has also filed a subsequent reply to Defendant's response. (DE 22.) This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for initial consideration and a Report and Recommendation. (DE 6.)

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (DE 20) be **GRANTED,** the decision of the Commissioner be **REVERSED**, and this matter be **REMANDED** for further administrative proceedings consistent with this opinion.

## I. INTRODUCTION

Plaintiff filed applications for DIB and SSI on February 1, 2016. (*See* Transcript of the Administrative Record (DE 15) at 133-34.)[1] He alleged a disability onset date of October 30, 2015 and asserted that he was unable to work because of Hodgkin's Lymphoma, high blood pressure, depression, anxiety, and insomnia. (AR 133-35.) Plaintiff's applications were denied initially and upon reconsideration. (AR 133-34, 163-64.) Pursuant to his request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ Shannon H. Heath on January 10, 2018. (AR 34.) The ALJ denied the claim on June 12, 2018. (AR 18-20.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision on March 15, 2019 (AR 7-9), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

The ALJ's unfavorable decision included the following enumerated findings based upon the record:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2018.

2. The claimant has not engaged in substantial gainful activity since October 30, 2015, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: Hodgkin's lymphoma; and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments

---

[1] The Transcript of the Administrative Record will be referenced by the abbreviation "AR" followed by the corresponding page number(s) as numbered in the large black Bates stamps on the bottom right corner of each page.

> in 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk and sit for 6 out of 8 hours, occasionally climb ladders and frequently perform other postural activities (climb ramps/stairs, balance, stoop, crouch, kneel, and crawl), with need to avoid concentrated exposure to hazards such as unprotected elevations and moving machinery, and with occasional use of the bilateral upper extremities for fine manipulation.
>
> 6. The claimant is capable of performing past relevant work as a home health aide/personal caregiver. This work does not require performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from October 30, 2015, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(AR 23-28.)

### III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

### IV. DISCUSSION AND CONCLUSIONS OF LAW

**A. Standard of Review**

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison*

*Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If substantial evidence supports the ALJ's decision, that decision must be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In other words:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

The Commissioner utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, if the claimant is engaged in substantial gainful activity, he is not disabled. *Id.* Second, the claimant is not disabled if he does not have a severe medically determinable impairment that meets the 12-month durational requirements. *Id.* Third, the claimant is presumed disabled if he suffers from a listed impairment, or its equivalent, for the proper duration. *Id.* Fourth, the claimant is not disabled if, based on his residual functional capacity ("RFC"), he can perform past relevant work. *Id.* Fifth, if the claimant can adjust to other work based on his RFC, age, education, and work experience, he is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the Commissioner at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301,

303 (6th Cir. 1988). A reviewing court is not permitted to try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (*Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court is required to accept the ALJ's explicit findings and ultimate determination unless the record as a whole is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984) (citing 42 U.S.C. § 405(g)).

### B. The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved the Plaintiff's claim at step four of the five-step process. The ALJ found that Plaintiff met the first two steps, but found at step three that Plaintiff was not presumptively disabled because he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was able to perform past relevant work as a health care aide/personal caregiver, which concluded the ALJ's evaluation and resulted in a finding that Plaintiff was not disabled. (AR 23-28.)

### C. Plaintiff's Assertion of Error

Plaintiff presents three assertions of error: (1) that the ALJ's RFC formulation is not supported by substantial evidence; (2) that the ALJ failed to properly weigh the opinion evidence in the record; and (3) that the ALJ failed to adequately consider Plaintiff's subjective complaints. (DE 20 at 7.) Plaintiff therefore requests that this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for additional consideration. (*Id.* at 17.)

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.
5

If the case contains an adequate record, "the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). The Court addresses Plaintiff's assertions of error below.

**1. The RFC.**

Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ failed to adequately accommodate Plaintiff's ongoing complaints of neuropathy and problems with manipulation. Plaintiff also contends that the RFC prevents the performance of work as a home health aide/caregiver, which would invalidate the ALJ's step four finding. Plaintiff additionally claims that the ALJ erred by failing to resolve an apparent conflict between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"). (DE 20 at 8-10.).

The ALJ relied on testimony from a vocational expert ("VE") to support her articulated RFC, as is permitted. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (noting that "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question" regarding a claimant's ability to perform specific jobs). It is well-established that in fashioning a hypothetical question to the VE regarding a claimant's functional capacity, the ALJ "is required to incorporate only those limitations accepted as credible by the finder of fact". *Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003) (quoting *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). However, the hypothetical must include a "complete assessment of [the

claimant's] physical and mental state and should include an accurate portrayal of [his] individual physical and mental impairments." *Id.* (quoting *Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 239 (6th Cir. 2002)). Also relevant to the instant matter is the Sixth Circuit's admonition that "[e]ven if the treating physician's opinion is not given controlling weight, there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 242 (6th Cir.2007)).

During the administrative hearing, the ALJ posed a hypothetical question to the VE involving an individual restricted to light work,[2] with additional limitations that included "occasional use of the bilateral upper extremities for fine manipulation." (AR 56-57.) The only document in the record containing this limitation is a medical source statement ("MSS") authored by Plaintiff's treating physician, Dr. Mark Messenger. (AR 734-35.) The VE testified that an individual with such a limitation would be able to perform Plaintiff's past relevant work as a home health aide. (AR 57.) Such testimony ultimately formed the basis of the ALJ's RFC formulation and her finding that Plaintiff is not disabled. (AR 26.)

The ALJ also posed a separate hypothetical question to the VE based on the more severe limitations set forth in Dr. Messenger's MSS, which included a restriction to occasional fine *and* gross manipulation with the bilateral hands. (AR 734.) However, the ALJ's hypothetical combined these limitations to describe an individual who could "occasionally use the bilateral upper extremity for manipulative activities." (AR 57.) The VE testified that such an individual would

---

[2] "Light work" is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

7

not be able to perform Plaintiff's past relevant work but would be able to perform other sedentary jobs in the national economy. (AR 57-58.)

Counsel for Plaintiff later examined the VE regarding this testimony and noted that Dr. Messenger's MSS actually restricted Plaintiff to occasional fine *and* gross manipulation, which would prevent performance of the jobs identified by the VE. (AR 60-61.) The ALJ thus questioned the VE once more and revised the hypothetical to reflect an individual would be limited to occasional fine and gross manipulation, which prompted the VE to testify that such limitations would "erode the sedentary job base." (AR 62.) The ALJ did not elicit any further testimony from the VE regarding particular jobs that an individual with both fine and gross manipulation restrictions could perform.

The ALJ in this case did not specify the amount of weight she gave to Dr. Messenger's MSS but instead asserted that his opinion was "not accorded significant weight." (AR 27.) The ALJ did, however, state that Dr. Messenger's opinion was "medically unsupported" (AR 27), which suggests that the MSS was rejected outright. Despite such rejection, she included occasional *fine* manipulation in the RFC based on "residual neuropathy" stemming from Plaintiff's cancer treatment. (AR 27-28.). This appears to conflict with the opinions provided by non-examining state agency physicians, both of which were accorded great weight by the ALJ (AR 27-28), who found that Plaintiff did not suffer from any manipulative limitations. (AR 117, 128, 145, 158.)

The Court finds that the ALJ's selective assignment of manipulative functioning, namely her inclusion of fine but not gross manipulative restrictions in the RFC, represents an impermissible attempt to interpret raw medical data pertaining to Plaintiff's residual neuropathy. *See Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 829-30 (E.D. Mich. 2017) (finding that an RFC based on the ALJ's "own interpretation of raw medical evidence" is not supported by

8

substantial evidence). Dr. Messenger is the only provider who concluded that Plaintiff was subject to fine manipulation limitations, yet the ALJ states unequivocally that his opinion is "medically unsupported." (AR 27.) The ALJ therefore based her finding that Plaintiff is limited to occasional fine manipulation solely on medical records that demonstrate residual neuropathy without explaining why such a condition does not also affect Plaintiff's gross manipulation. While the ALJ is not required to rely exclusively on the opinion of a physician in formulating the RFC, *Rudd v. Comm'r of Soc. Sec.,* 531 F. App'x 719, 728 (6th Cir. 2013), she is not permitted to apply only those articulated restrictions that favor her ultimate decision. *See Davis v. Colvin*, No. 2:10-cv-0088, 2015 WL 3504984, at *6 (M.D. Tenn. May 28, 2015) (ALJ may not "cherry-pick the record to support [her] conclusions[.]") (quoting *Ellis v. Schweicker*, 739 F.2d 245, 248 (6th Cir. 1984)).

Defendant argues that the ALJ properly omitted a gross manipulation restriction from the RFC based on her decision to accord great weight to the opinions of two non-examining state agency physicians, but this does not explain why the ALJ elected to include fine manipulative restrictions that were unequivocally rejected by the same two state agency physicians. (AR 117, 145.) The ALJ's cursory notation that the fine manipulative limitation "is reasonably supported due to residual neuropathy" (AR 27-28) does not rectify this schism as there is no explanation as to why a gross manipulative limitation was not also justified in light of Plaintiff's residual neuropathy. The ALJ therefore failed to rationally connect the RFC with the medical evidence of record. *See Gross*, 247 F. Supp. 3d at 830 ("[I]t is unclear on what the ALJ based her ultimate RFC conclusion, and she draws no accurate and logical bridge to instruct the Court of her reasoning.").

Plaintiff asserts, and the Court agrees, that such error is not harmless. The VE specifically testified that inclusion of a restriction limiting an individual to occasional fine *and* gross manipulation would not only preclude performance of Plaintiff's past relevant work, but would

"erode the sedentary work pool to where it is unlikely [the individual] would be able to sustain sedentary jobs in the sedentary work pool." (AR 62.) The inclusion of gross manipulative restrictions may therefore eliminate Plaintiff's ability to perform any work in the national economy. Moreover, the ALJ failed to elicit any testimony concerning an individual's ability to perform light work with additional fine *and* gross manipulative limitations. Absent such testimony, the ALJ's RFC is not supported by substantial evidence.

The Sixth Circuit has made clear that ALJs "must not succumb to the temptation to play doctor and make their own independent medical findings." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (internal citation omitted). This is precisely what the ALJ did by articulating a particular manipulative limitation based solely on medical records documenting residual neuropathy. The ALJ compounded this error by failing to consider whether this condition similarly impacted Plaintiff's gross manipulative capacity despite evidence from a treating physician that it in fact affected both.

Notably, this is not a case involving an ALJ's failure to adequately explain her selective incorporation of limitations set forth by a non-treating physician, which has been held to constitute harmless error. *Cf. Conley v. Astrue*, No. 3:07-cv-1080, 2009 WL 334644, at *13 (M.D. Tenn. Feb. 9, 2009) (declining to find reversible error where ALJ failed to "specifically delineate his reasoning with respect to … limitations assessed by … a government consultant who examined plaintiff on only one occasion"). The limitations at issue here were instead proffered by a treating physician, which implicates a greater level of scrutiny. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) ("The Social Security Administration gives the most weight to opinions from a claimant's treating source[.]"). Because the ALJ failed to explain in any way her decision to incorporate only a fine manipulation restriction into the RFC; her decision is not supported by

substantial evidence and warrants remand for additional administrative proceedings. *See Morgan v. Astrue*, No. 10-207-KSF, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) ("Where … there is insufficient support for the ALJ's findings, the appropriate remedy is reversal and a sentence-four remand for further consideration.").[3]

### 2. Treating Physician's Opinion.

Plaintiff next contends that the ALJ erred by rejecting both Dr. Messenger's MSS and a previous letter, dated March 15, 2016, in which Dr. Messenger opined that Plaintiff would be unable to work "for at least the next year" due to chemotherapy treatment for Hodgkin's disease. (AR 494.) It is undisputed that Dr. Messenger represented a treating physician; therefore his opinion is evaluated pursuant to the so-called "treating physician rule," which requires the ALJ to give controlling weight to a treating physician's opinion if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[4] If the ALJ does not give controlling weight to the opinion, she must evaluate it based on a variety of factors that include the extent of the treatment relationship, whether the physician is a specialist, and the degree to which the opinion is consistent with the record as a whole. *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 376 (6th Cir. 2013). The ALJ must provide "good reasons" for her weight allocation that are "sufficiently specific to make clear to any subsequent reviewers." *Johnson-Hunt v. Comm'r of Soc. Sec.*, 500 F. App'x 411, 418 (6th Cir. 2012) (quoting *Helm v. Comm'r of Soc. Sec.,* 405 F. App'x 997, 1000 (6th Cir. 2011)).

---

[3] In light of this finding, the Court declines to address Plaintiff's additional arguments regarding the inadequacy of the RFC.

[4] The treating physician rule applies to all social security claims filed before March 27, 2017 (*see* 82 Fed. Reg. 15263-01, 2017 WL 1105348 (Mar. 27, 2017), such as the instant one. (AR 133-34).

11

Dr. Messenger's MSS was completed on March 30, 2017 and contains the following physical limitations, among others: lifting no more than 10 pounds on an occasional basis and no more than five pounds on a frequent basis; standing and/or walking no more than four hours per workday; standing and/or walking no more than one hour at one time; sitting no more than four hours during a workday; sitting no more than two hours at one time; and, occasional fine and gross manipulation with both hands. (AR 734.) Dr. Messenger also opined that Plaintiff suffered from "moderate" pain that would "frequently" interfere with his attention and concentration. (AR 735.)

The ALJ provided the following assessment of Dr. Messenger's MSS and March 2016 letter:

> [T]hese opinions are inconsistent with the oncology treatment records from Dr. Messenger and Dr. [Michael] Sattasiri. They are also inconsistent with the Centerstone records through December 2107 that include the claimant's positive reports on July 8, 2016 that chemotherapy was effective, and on February 8, 2017 that he had achieved good remission from the cancer .... Therefore, the opinions from Dr. Messenger are not accorded significant weight in this decision because they are medically unsupported.

(AR 27.) The ALJ discussed Dr. Messenger's treatment notes elsewhere in the opinion, which she characterizes as reflecting mild physical symptoms and a low frequency of pain. The ALJ also emphasizes a consultation note from fellow oncologist Dr. Sattasiri, which purportedly demonstrate that Plaintiff was "[f]ully active, able to carry on all pre-disease performance without restriction." (AR 25, 785.)

On review of the record, the Court concludes that the ALJ's evaluation of Dr. Messenger's opinion violates the treating physician rule. The Court notes initially that the ALJ appears to place undue emphasis on the success of Plaintiff's chemotherapy in treating Hodgkin's lymphoma in evaluating the extent of his symptoms. While such treatment was indeed effective in eliminating

12

the disease, this success does not negate the numerous physical limitations that were caused, according to Dr. Messenger, by "residual pain and neuropathy" following remission. (AR 734-35.)

It is also a questionable practice for an ALJ to base an analysis of a claimant's *physical* functionality on the absence of documented physical symptoms in *mental* health records from Centerstone, as the ALJ does here. Plaintiff received psychiatric treatment at Centerstone for "symptoms of anxiety and depression" (AR 843) and there is little indication that Plaintiff's physical symptoms were at any point a focus of his visits with those providers. Moreover, during the few instances when physical symptoms were discussed, Plaintiff reported fatigue and "nerve problems in his hands" (AR 844, 868), both of which support Dr. Messenger's findings of moderate fatigue and neuropathy. (AR 735.)[5]

Turning to the other basis for the ALJ's rejection of the treating physician opinion, i.e. the treatment records of Drs. Messenger and Sattasiri, the Court finds multiple problems with the ALJ's analysis. First, the ALJ accords great weight to a notation in Dr. Sattasiri's consultation report from September 13, 2016 indicating that Plaintiff scored a "0" on an office performance status form, which corresponds to an individual who is "[f]ully active, able to carry on all pre-disease performance without restriction." (AR 785.) The ALJ relies on this notation multiple times in her opinion to both reject the treating physician's MSS and discount the credibility of Plaintiff's assertions. (AR 25, 27.) A closer examination of the consultation report, however, shows that Dr. Sattasiri actually suggested that Plaintiff undergo radiotherapy to treat his "severe back pain" (AR 785), and documented complaints of swelling in the lower extremities, fatigue, and sensory problems with the hands and feet. (AR 784.) While it is unclear whether such notations demonstrate that Plaintiff's "0" score was actually a typographical error, as Plaintiff suggests

---

[5] The Court emphasizes that the provider discussed these physical symptoms only in relation to their impact on Plaintiff's mental welfare. (AR 844, 868.)

13

(DE 20 at 15), such evidence undercuts the ALJ's conclusion that the consultation report showed "no significant residuals from chemotherapy." (AR 27.) The omission of such evidence from the administrative opinion also prevents the Court from determining whether the ALJ undertook a meaningful review of the record. *See Morris v. Sec'y of Health & Human Servs.*, 845 F.2d 326 (table), 1988 WL 34109, at * 2 (6th Cir. 1988) ("[W]hen the ALJ fails to mention rejected evidence, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.") (internal citation and quotations omitted).

Additionally, the ALJ incorrect asserts that Dr. Sattasiri's notes demonstrate that Plaintiff never reported a pain level of more than "4" on a 10-point scale. (AR 25.) The record instead reflects that Plaintiff reported experiencing pain at a level of "5" on multiple occasions (AR 784, 806), and complained of back pain, leg pain, and numbness in both arms. (AR 806.) Although the difference in pain scores is nominal, such evidence again suggests that the ALJ failed to meticulously evaluate the administrative record as a whole. *See Stanfield v. Colvin*, No. 2:12-cv-213-KSF, 2013 WL 3935071, at *3 (E.D. Ky. July 30, 2013) ("[A]n ALJ may not mischaracterize contrary evidence to support a conclusion.") (citing *Cornett v. Benham Coal, Inc.,* 227 F.3d 569 (6th Cir. 2000)).

Finally, as discussed in connection with the first assertion of error, the ALJ failed to reconcile her rejection of Dr. Messenger's opinion as "medically unsupported" with her decision to incorporate his occasional fine manipulation limitation into the RFC. For the same reasons, the Court cannot conclude this error was harmless.

The requirement that the ALJ provide good reasons for rejecting a treating physician's opinion "exists so plaintiffs are able to understand how their case was decided and to ensure the ALJ applied the treating physician rule." *Peacock v. Astrue*, No. 2:05-0076, 2009 WL 3615011, at

*15 (M.D. Tenn. Nov. 2, 2009) (citing *Wilson*, 378 F.3d at 544-45). The ALJ did not fulfill her obligations in the instant matter; she ignored relevant evidence and failed to explain her decision to reject Dr. Messenger's MSS despite including part of his opinion in the RFC. The ALJ may ultimately conclude again that Dr. Messenger's opinion is not supported by the available medical evidence, but she must put forth "some effort to identify the specific discrepancies and [] explain why it is the treating physician's conclusion that gets the short end of the stick." *Friend v. Comm'r of Soc. Sec.,* 375 F. App'x 543, 552 (6th Cir. 2010). Plaintiff's assertion of error is therefore well-taken and the Court recommends remand for further consideration of the treating physician's opinion.

### 3. The ALJ's Assessment of Plaintiff's Subjective Symptoms.

Plaintiff's final assertion of error involves the ALJ's conclusion that Plaintiff's subjective complaints were inconsistent with the medical evidence in the administrative record. (AR 27.) Plaintiff contends that the ALJ improperly failed to evaluate the severity of his symptoms and points to Social Security Ruling ("SSR") 16-3p, which requires the ALJ to consider a claimant's "statements about the intensity, persistence, and limiting effects of the symptoms" and "evaluate whether the statements are consistent with objective medical evidence and other evidence." 2017 WL 5180304, at *6 (October 25, 2017).[6]

---

[6] Under SSR 96-7p, SSR 16-3p's predecessor, the ALJ was directed to make a "credibility" determination based on the claimant's statements about the limiting effects of his alleged symptoms. 1996 WL 374186, at *3 (July 2, 1996). SSR 16-3p does not use the term "credibility," although there appears to be no articulated change to the ALJ's analysis. Courts have noted that the implementation of SSR 16-3p did not abrogate case law pertaining to credibility evaluations under SSR 96-7p, *see Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119, n.1 (6th Cir. 2016) (noting that SSR 16-3p removed the term "credibility" only to "clarify that subjective symptom evaluation is not an examination of an individual's character"), and have largely "decline[d] to engage in verbal gymnastics to avoid the term credibility where usage of the term is most logical." *Pettigrew v. Berryhill*, No. 1:17-cv-1118, 2018 WL 3104229, at *14, n.14 (N.D. Ohio June 4, 2018), *report and recommendation adopted*, 2018 WL 3093696 (N.D. Ohio June 22, 2018).

The Court finds that substantial evidence supports the ALJ's credibility determination in this matter. The ALJ cited Plaintiff's mild mental symptoms and noted the effectiveness of medication in controlling such symptoms (AR 27), as was appropriate. *See Robertson v. Colvin*, No. 4:14-CV-35, 2015 WL 5022145, at *6 (E.D. Tenn. Aug. 24, 2015) (finding substantial evidence supported ALJ's decision to discount claimant's credibility because "the documented effectiveness of [the claimant's] treatment was inconsistent with the debilitating degree of limitations alleged"). Although the ALJ did rely on the questionable "0" score from Dr. Sattasiri's consultation note to discount Plaintiff's claims regarding the severity of his pain, as discussed above, this is not sufficient to overcome the extremely deferential standard applied to a credibility determination. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 476 (6th Cir. 2016) ("While in theory we will not disturb an ALJ's credibility determination without a compelling reason … in practice ALJ credibility findings have become essentially unchallengeable[.]") (internal citations and quotations omitted).

Nevertheless, the Court concludes that the ALJ's ultimate decision is not supported by substantial evidence and therefore recommends that this matter be remanded for further administrative proceedings.

## V. RECOMMENDATION

For the above stated reasons, it is recommended that Plaintiff's motion for judgment on the administrative record (DE 20) be GRANTED and the Commissioner's decision be REVERSED and REMANDED for further consideration.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made.

*See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (*en banc*). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

                Respectfully submitted,

_____
BARBARA D. HOLMES
United States Magistrate Judge